2020 IL App (1st) 190143-U

No. 1-19-0143

Order filed June 9, 2020.

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| JACK RISER, *et al.*, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiffs-Appellants, | ) | Cook County. |
| | ) | |
| v. | ) | No. 2015 L 009955 |
| | ) | |
| THE CITY OF CHICAGO, | ) | The Honorable |
| | ) | Thomas R. Mulroy, Jr., |
| Defendant-Appellee. | ) | Judge Presiding. |

JUSTICE LAVIN delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Coghlan concurred in the judgment.

**ORDER**

¶ 1     *Held*: The circuit court properly entered summary judgment in favor of defendant where plaintiffs failed to show that their takings claim was timely filed under the applicable statute of limitations period or that defendant was equitably estopped from asserting that defense. We affirm.

¶ 2     In 2013, defendant, the City of Chicago (City), began operating a new runway at O'Hare International Airport (O'Hare). About two years later, plaintiffs, Jack Riser, *et al.*, a class of property owners, filed an inverse condemnation action against the City, claiming that the aircraft

noise from the runway interfered with the use and enjoyment of their property, and thus, constituted a taking of an avigation easement for which they were entitled to just compensation.[1]

¶ 3     In response, the City asserted that plaintiffs' claim, having been filed more than a year after the runway opened, was time-barred pursuant to the one-year statute of limitations period set forth in section 8-101(a) of the Local Governmental and Governmental Employees Tort Immunity Act (Act) (745 ILCS 10/8-101(a) (2014)). The circuit court agreed and entered summary judgment in favor of the City.

¶ 4     Plaintiffs now appeal, contending that genuine issues of material fact existed as to when the statute of limitations period began to run on their takings claim, precluding summary judgment. Alternatively, plaintiffs contend that the City was equitably estopped from asserting a statute of limitations defense because it made false representations about efforts to alleviate the runway's impact on them. For the reasons that follow, we affirm.

¶ 5                                    BACKGROUND

¶ 6     The following facts were obtained through the parties' pleadings, depositions, affidavits and other supporting documents, and were presented to the court below.

¶ 7     Plaintiffs are a group of homeowners that reside near O'Hare in Bensenville, Illinois. On October 17, 2013, the City, who owns O'Hare, began operating a new runway (10C-28C) at the airport, which resulted in heavier air traffic over plaintiffs' homes. According to plaintiffs, the runway generated excessive aircraft noise which deprived them of the use and enjoyment of their homes. Nevertheless, they waited nearly two years before filing the present inverse condemnation action against the City on October 1, 2015.

_____

[1]Sixty-nine plaintiffs are parties to this appeal. We note, however, that 85 plaintiffs were parties to the initial action in this matter, 14 of whom were later dismissed.

¶ 8     We note that the case was subsequently removed to federal court because plaintiffs had alleged takings claims under both state and federal law, however, it was later remanded after plaintiffs dismissed their federal claim.

¶ 9     Upon remand, plaintiffs filed, as relevant here, a third amended complaint against the City, claiming that its operation of the runway constituted a taking of their property for which they were entitled to just compensation under the Illinois Constitution of 1970 (Ill. Const. 1970, art. I, § 15). The City moved to dismiss their claim, which was filed more than a year after the runway had opened, as time-barred pursuant to the Act's one-year statute of limitations period. We note, however, that plaintiffs, at no point, disputed the City's assertion that one-year was the applicable statute of limitations period for their claim. Instead, they argued that the City's alleged taking did not occur until "the Spring/Summer 2015," and therefore, their claim was timely filed on October 1, 2015. In the alternative, plaintiffs argued that the City was equitably estopped from asserting a statute of limitations defense because it made false representations involving efforts to mitigate the runway's impact which they relied upon to delay filing their claim. The circuit court denied the City's motion to dismiss on June 7, 2017.

¶ 10     The next year, the City filed a motion for summary judgment, reasserting that plaintiffs' claim was barred under the Act's one-year statute of limitations period which, the City argued, began to run on October 17, 2013, the day the runway opened. In support of its argument, the City attached an affidavit from Aaron Frame, the Deputy Commissioner of Environment for the City's Department of Aviation. Frame's affidavit included attached exhibits depicting the amount of air traffic on the runway and stated: "[t]he data demonstrate[s] that the most significant change occurred on October 17, 2013, when operations began at the Runway, and there have been no fundamental changes in use of the Runway from that date through the first

two years of operations." The City also attached an affidavit from Paul Dunholter, a licensed engineer who specializes in airport noise. Dunholter's affidavit included attached exhibits based on his evaluations of the noise levels at plaintiffs' properties before and after the runway opened. His affidavit stated that the most significant increase in noise occurred prior to "October 1, 2014" and "[s]ince that date, there has been no significant increase in noise."

¶ 11     We note that the City also moved, successfully, for summary judgment against 42 plaintiffs based on their deposition testimony which, the City argued, established their takings claim was time-barred notwithstanding the objective evidence mentioned *supra*. Plaintiffs, however, have not challenged that judgment on appeal; therefore, we need not address it.[2]

¶ 12     In any event, plaintiffs, rather than disputing the evidence in Frame and Dunholter's affidavits, responded with a list of citations to certain plaintiffs' deposition testimony to support their argument that the City's alleged taking occurred "after October 1, 2014." Additionally, plaintiffs raised their prior estoppel argument, citing various statements from City representatives regarding remedial measures they had allegedly promised to implement to "rectify the Bensenville Runway/noise issues." According to plaintiffs, those statements caused them to delay filing their takings claim. The record shows, however, that the City had in fact implemented several measures to mitigate the aircraft noise from the runway, including sound insulation which had been installed in several plaintiffs' homes, among other measures.

¶ 13     Ultimately, the circuit court found that the City's alleged taking occurred when the runway first opened, stating: "[t]he undisputed data demonstrates that the most significant change in overflight of Plaintiffs' property occurred on October 17, 2013." In reaching its

---

[2]The City correctly observes that plaintiffs' notice of appeal does not mention the circuit court's judgment granting summary judgment against 42 plaintiffs (see Ill. S. Ct. R. 303(b)(2) (eff. July 1, 2017)), nor does their brief. See Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018) (stating that "[p]oints not argued are forfeited and shall not be raised in the reply brief").

conclusion, the court noted that plaintiffs had "failed to establish that a second, increased incremental taking of an avigation easement occurred subsequent to October 1, 2014 which would extend the statute of limitations." The court also rejected plaintiffs' equitable estoppel argument, finding that the various statements from City representatives cited by plaintiffs "were not 'affirmative acts' by the City that are binding," as required to support an estoppel claim. Consequently, the circuit court granted the City's summary judgment motion against plaintiffs on December 19, 2018.

¶ 14    Plaintiffs now appeal.

¶ 15                                    ANALYSIS

¶ 16    As stated, plaintiffs contend that the circuit court erroneously granted summary judgment to the City because there were genuine issues of material fact regarding whether their inverse condemnation claim was filed within the applicable statute of limitations period. Before proceeding to the merits, however, we must address plaintiffs' flagrant disregard for the Illinois Supreme Court rules, which are mandatory, not optional. See *Miller v. Lawrence*, 2016 IL App (1st) 142051, ¶ 18.

¶ 17    Foremost, plaintiffs' statement of facts does not contain facts relevant to determining the issues on appeal such as the procedural history from the court below, and is replete with argumentative, conclusory allegations like: "[t]he City should not have been allowed to take [plaintiffs'] private property for public use without just compensation as determined by a jury." Illinois Supreme Court Rule 341(h)(6) (eff. May 25, 2018) provides that the appellants' statement of facts "shall contain the facts necessary to an understanding of the case, stated accurately and fairly without argument or comment, and with appropriate reference to the pages of the record on appeal." To that end, the City correctly notes that plaintiffs' statement of facts

cites only to unsupported allegations from their original complaint which is not relevant here and may not be relied upon by parties defending against summary judgment to create a genuine issue of material fact. See *CitiMortgage, Inc. v. Bukowski*, 2015 IL App (1st) 140780, ¶ 19.

¶ 18    Additionally, plaintiffs' argument section sets forth, in a bullet-point fashion, nearly 10 pages of particularly skewed deposition testimony and frequently omits citations to the record or authorities relied upon, in violation of Illinois Supreme Court Rule 341(h)(7) (eff. May 25, 2018). And where citations are provided, they are not in proper form. See Ill. S. Ct. R. 341(g) (eff. May 25, 2018). Their reply brief is similarly deficient where it repeatedly omits words and punctuation from sentences and includes typos. See Ill. S. Ct. R. 341(j) (eff. May 25, 2018).

¶ 19    Adherence to the proper format of briefs is not an inconsequential matter and, where parties make arguments absent appropriate citation, we decline to address them. See *Enadeghe v. Dahms*, 2017 IL App (1st) 162170, ¶ 23. Furthermore, it bears noting that plaintiffs are represented by counsel in this matter and although no one is excused from complying with the high court's rules, this display of utter carelessness from licensed attorneys is simply unacceptable. Nevertheless, we will proceed to consider the merits of their appeal even though these deficiencies would clearly justify striking plaintiffs' briefs. See *Miller*, 2016 IL App (1st) 142051, ¶ 18 (where the parties' briefs lack compliance with the Supreme Court rules, they risk this court's discretionary power to strike their briefs and dismiss the appeal).

¶ 20    Summary judgment should be granted when the pleadings, admissions on file, depositions and any affidavits, construed strictly against the moving party, reveal no genuine issue of material fact so that the movant is entitled to judgment as a matter of law. *Id.* ¶ 21. We review a circuit court's summary judgment ruling *de novo*, and furthermore, we may affirm the

court's ruling on any basis in the record, regardless of whether the court relied on that basis or whether its reasoning was correct. *Id*. ¶¶ 21-22.

¶ 21    Section 8-101(a) of the Act provides that, with an exception not relevant here, a civil action against a municipality must be "commenced within one year from the date that the injury was received or the cause of action accrued." 735 ILCS 10/8-101(a) (West 2014). In an inverse condemnation action, property owners seek compensation for an alleged taking of private property by the government where no condemnation proceedings have been initiated. *City of Chicago v. ProLogis*, 236 Ill. 2d 69, 77 (2010). Because Illinois courts have not previously addressed when an avigation takings claim accrues, however, and because our takings clause is patterned after the fifth amendment to the United States Constitution, we look to federal law for guidance. See *Hampton v. Metropolitan Water Reclamation District of Greater Chicago*, 2016 IL 119861, ¶ 16 (finding federal court decisions relevant in analyzing a takings claim based on Illinois state law).

¶ 22    The fifth amendment and the Illinois Constitution of 1970 protect owners of private property from having their property taken by the government without just compensation. U.S. Const., amend. V; Ill. Const. 1970, art. I, § 15. Under federal law, an avigation takings claim accrues when the government "begins to operate aircraft regularly and frequently over a parcel of land at low altitudes, with the intention of continuing such flights indefinitely." (Internal quotation marks omitted.) *Andrews v. United State*s, 108 Fed. Cl. 150, 157 (2012). Additionally, to the extent there may be a separate ("second") takings claim with its own statute of limitations period, this accrues when the government "increases the number of flights or introduces louder aircraft so as to sufficiently increase the scope of the original easement." (Internal quotation marks omitted.) *Id*.

¶ 23 Here, plaintiffs essentially argue that their deposition testimony raised questions of fact as to when their avigation takings claim accrued, and consequently, when the one-year statute of limitations period began to run. We note, however, that plaintiffs have been inconsistent about when the City's alleged taking occurred, and moreover, they have not identified in their briefs a date on which their claim accrued. For example, plaintiffs' response to the City's motion to dismiss asserted that their claim accrued in "the Spring/Summer 2015," yet their briefs assert that it accrued "after October 1, 2014" in "late 2014" or "early to mid-2015." Regardless, after examining the record in this case, we find that the City was entitled to summary judgment as a matter of law.

¶ 24 Plaintiffs presented no evidence in opposition to the City's summary judgment motion that the most significant change occurred when the runway first opened on October 17, 2013, nor did they present any evidence showing that there was an increase in the number of flights or aircraft noise after October 1, 2014. And while we recognize that plaintiffs, as the nonmoving parties, were not required to prove their case to defeat summary judgment, they needed to provide some factual basis that would have arguably entitled them to judgment under the law and they failed to do so. *Busse v. Motorola*, Inc., 351 Ill. App. 3d 67, 71 (2004). Instead, plaintiffs' supposed evidence that the City's taking occurred "after October 1, 2014" was based on unsupported assertions, opinions and self-serving testimony elicited from plaintiffs' counsel during depositions which, incidentally, was not supported by the record.

¶ 25 For example, plaintiff David Aguirre testified that there was a significant increase in aircraft noise when the runway first opened: "[w]hat we noticed was that the noise was just really loud and really often." Plaintiff Jolanta Gorniak even ranked the noise effect when the runway opened "at about a 9 or a 10 out of 10." The testimony of plaintiff Jeffrey Agonatha, among

others, likewise demonstrated that the most significant impact occurred when the runway opened on October 17, 2013:

"Q. Did the noise level change when the runway opened?

A. Oh, my God, yes.

Q. How?

A. It's way louder, extremely louder."

This testimony clearly belies plaintiffs' assertion that their takings claim did not accrue until the following year.

¶ 26    Based on the foregoing, we conclude that plaintiffs failed to show that their avigation takings claim accrued after the runway opened on October 17, 2013. Therefore, the circuit court correctly determined that their claim was untimely pursuant to the Act's one-year statute of limitations period.

¶ 27    Plaintiffs, nevertheless, contend that their inverse condemnation claim was timely filed pursuant to the five-year statute of limitations period applicable to actions seeking "to recover damages for an injury done to property," set forth in section 13-205 of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/13-205 (West 2014)). The City correctly argues, however, that plaintiffs have forfeited their statute of limitations challenge by not raising it in the court below. Theories not raised during summary judgment proceedings are forfeited on review. *US Bank, National Association v. Avdic*, 2014 IL App (1st) 121759, ¶ 34; *Village of Arlington Heights v. Anderson*, 2011 IL App (1st) 110748, ¶ 15. Accordingly, plaintiffs' contention has been forfeited for purposes of review, and we will not comment on whether their inverse condemnation claim was governed by the five-year statute of limitations period under section 13-205 of the Code or by the Act's one-year statute of limitations period.

¶ 28    We also reject plaintiffs' alternative contention that the City was equitably estopped from asserting a statute of limitations defense because it "made repeated public promises and representations" about ongoing efforts to alleviate the runway's impact on them.

¶ 29    In Illinois, courts will not invoke equitable estoppel against a municipality unless the claimants have demonstrated affirmative acts by the municipality upon which they substantially relied to their detriment. *Schivarelli v. Chicago Transit Authority*, 355 Ill. App. 3d 93, 103 (2005). In this regard, the affirmative acts which induced reliance "must be the acts of the municipality, such as legislation, and not merely the unauthorized acts of a ministerial officer." (Internal quotation marks omitted.) *Monat v. County of Cook*, 322 Ill. App. 3d 499, 509 (2001); see also *Morgan Place of Chicago v. City of Chicago*, 2012 IL App (1st) 091240, ¶ 33. Moreover, we will not disturb a lower court's decision concerning equitable estoppel, as relevant here, unless it is against the manifest weight of the evidence. *Id.*

¶ 30    Here, plaintiffs have not shown, or argued, that there was an affirmative act by the City which they reasonably relied upon to delay filing their takings claim. Rather, they have argued that the City's representatives made "repeated public promises and representations to [them] that the City was working on various initiatives to alleviate *** the impact of the Runway." Plaintiffs, however, have not identified any specific initiatives that were allegedly promised by those representatives. Furthermore, as set forth above, the record shows that the City had in fact implemented initiatives to reduce the runway's impact on plaintiffs, namely, sound insulation for their homes. Because plaintiffs have failed to demonstrate an affirmative act by the City as required to invoke equitable estoppel, we cannot say that the circuit court's judgment on this issue was against the manifest weight of the evidence.

¶ 31     In sum, we conclude that plaintiffs failed to show that their takings claim was timely filed within the Act's one-year statute of limitations period or that the City was equitably estopped from asserting that defense. Accordingly, the circuit court properly granted summary judgment to the City on that basis.

¶ 32                                         CONCLUSION

¶ 33     For the foregoing reasons, we affirm the circuit court's judgment.

¶ 34     Affirmed.