# Illinois Official Reports

## Appellate Court

---

### *Miller v. Lawrence*, 2016 IL App (1st) 142051

---

| | |
|---|---|
| Appellate Court Caption | JAMES MILLER, Plaintiff-Appellant, v. STANLEY E. LAWRENCE and SHARI E. LAWRENCE, Defendants-Appellees. |
| District & No. | First District, Fifth Division<br>Docket No. 1-14-2051 |
| Filed | August 19, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 13-CH-473; the Hon. Diane J. Larsen, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Gordon Gault and Anne Hannigan, both of Chicago, for appellant.<br><br>Peter J. Schmiedel and Ronald D. Menna, Jr., both of Fischel & Kahn, Ltd., and Patricia J. Handlin, both of Chicago, for appellees. |
| Panel | JUSTICE GORDON delivered the judgment of the court, with opinion.<br>Presiding Justice Reyes and Justice Lampkin concurred in the judgment and opinion. |

**OPINION**

¶ 1       The instant appeal arises from the dismissal of plaintiff James Miller's complaint for conversion, which plaintiff filed against defendants Stanley and Shari Lawrence based on their actions after the death of defendants' mother, for whom plaintiff had been a caregiver. The trial court dismissed the complaint with prejudice after (1) granting defendant Stanley Lawrence's motion for summary judgment and (2) granting defendant Shari Lawrence's combined motion to dismiss the complaint pursuant to sections 2-615 and 2-619(a)(6) of the Code of Civil Procedure (Code) (735 ILCS 5/2-615, 2-619(a)(6) (West 2012)). Plaintiff appeals, arguing that (1) his lawsuit was not barred by the doctrine of *res judicata* and (2) his lawsuit was not encompassed by a release plaintiff had previously executed. For the reasons that follow, we affirm the trial court's judgment.

¶ 2                                      BACKGROUND

¶ 3       On January 8, 2013, plaintiff filed a verified complaint against defendants, in which he alleged that he had been the caretaker of Frances J. Lawrence, defendants' mother, for approximately 15 years prior to her August 21, 2009, death. Frances had an annuity and a life insurance policy, both of which named plaintiff as the sole beneficiary. Frances also had a bank account that listed plaintiff as the beneficiary.

¶ 4       The complaint alleges that in April 2009,[1] Frances signed a power of attorney for property appointing defendant Shari Lawrence as her agent. On April 15, 2009, Shari used the power of attorney to remove plaintiff as beneficiary of the annuity and life insurance policies and substitute herself and Stanley as beneficiaries. Additionally, on July 15, 2009, Shari used the power of attorney to remove plaintiff as the beneficiary of the bank account, close the account, and withdraw the proceeds. Frances died on August 21, 2009, and defendants collected the funds from the annuity and life insurance policies.

¶ 5       The complaint alleges that Shari's use of a power of attorney in this manner was improper and further alleges that the funds collected by defendants were wrongfully converted by defendants and should be returned to plaintiff.

¶ 6       Attached to the complaint was a copy of the power of attorney, which named Shari as Frances' agent and named Stanley as successor agent. The power of attorney was signed by "Frances Lawrence by Stanley Lawrence," and also contained a handwritten "X" next to the signature line. Immediately preceding the signature was a statement that, "[b]ecause of my disability (gout in both hands), I am asking my son, Stanley Lawrence, to sign this power of attorney on my behalf and at my request."

¶ 7       On March 6, 2014, Shari filed a combined motion to dismiss plaintiff's complaint pursuant to sections 2-615 and 2-619(a)(6) of the Code (735 ILCS 5/2-615, 2-619(a)(6) (West 2012)). In support of a dismissal pursuant to section 2-619(a)(6), the motion claimed that plaintiff had previously filed a case in federal district court against Shari and Stanley, which resulted in a settlement agreement that released any claims that could have been raised in the federal case. In support of a dismissal pursuant to section 2-615, the motion claimed that plaintiff could not

_____

[1]While the complaint alleges the power of attorney was signed in April 2009, the power of attorney attached to the complaint is dated March 10, 2009.

state a cause of action for conversion, as the subject matter of the litigation was monetary funds and not chattel.

¶ 8    On March 24, 2014, Stanley filed a motion for summary judgment also claiming that plaintiff's claims against him were barred by a release that plaintiff executed on June 10, 2013, in connection with a settlement of the prior federal court action. The motion claimed that at the time plaintiff executed the release, plaintiff had litigated state law claims in the federal lawsuit "and was aware of the [instant] pending lawsuit." The motion additionally claimed that plaintiff's claims were barred by the doctrine of *res judicata* because the claims alleged in the state court case could have been raised in the federal court case.

¶ 9    Attached to the motion for summary judgment was a copy of a release, signed by plaintiff on June 10, 2013. The release is entitled "Release of All Claims Against Stanley Lawrence" and provides, in pertinent part:

> "In consideration of the payment of One Hundred Two, Seven Hundred Fifty Thousand Dollars ($102,750), Plaintiff, JAMES MILLER, does hereby release Defendant, STANLEY LAWRENCE, and all of his heirs, relatives, executors, administrators, successors, assigns, agents, employees, insurance carriers, of and from any causes of action and claims for wrongful eviction, malicious prosecution, intentional infliction of emotional distress, personal injuries, property loss, will contests, demands, costs, loss of services, expenses, compensation, damages, and any other claims or causes of action whether or not presently known, direct or vicarious, pending or threatened, which he now has or may have hereafter on account of, arising out of or relating to any of the matters alleged or which could have been alleged and tried in the lawsuit entitled JAMES MILLER v. STANLEY LAWRENCE, filed in the United Stated District Court for the Northern District of Illinois as Case No. 11 C 01520, including without limitation, any demand, claim, or cause of action on account of, arising out of, or relating to the property located at \*\*\* South Wabash, Chicago, Illinois and JAMES MILLER's removal from it. \*\*\*
>        \*\*\*
> This Release contains the ENTIRE AGREEMENT between the parties hereto, and the terms of this Release are contractual and not a mere recital. The undersigned have CAREFULLY READ this release, fully understand it, and sign this as the free and voluntary act of the undersigned."

¶ 10   Also attached to the motion for summary judgment were the original and fifth amended complaints in the federal case referenced by the motion and release. The fifth amended complaint named Stanley, Shari, and three Chicago police officers as defendants and alleged that plaintiff began living at a residence on South Wabash Avenue (Wabash property) in Chicago in April 1993 with the permission of Frances, the owner of the residence. Plaintiff resided at the residence for over 16 years and provided care for Frances, who battled cancer near the end of her life. According to the complaint: "[d]uring that time, Frances Lawrence established a strong friendship with Plaintiff. Frances Lawrence exhibited a great amount of trust by granting Plaintiff Power of Attorney. Plaintiff was also designated as the recipient of [the residence] in a will prepared by Frances Lawrence."

¶ 11   The federal complaint alleged that on March 10, 2009, Frances "allegedly executed a Revocation of such Power of Attorney, which then appointed her daughter, Shari Lawrence, as her new Power of Attorney and named her son, Stanley Lawrence, as successor agent."

- 3 -

Additionally, "Nannette Fabi, M.D., a physician licensed in the State of Illinois, certified in a letter dated March 19, 2009, that after examining Frances Lawrence it was found that she had severe gout in both hands rendering her unable to write."

¶ 12    The federal complaint alleged that on April 2, 2009, Frances allegedly executed a quit claim deed, conveying her Wabash property to Shari and Stanley. Thereafter, on April 15, 2009, Shari and Stanley "attempted to serve" plaintiff with a five day notice, which was "improperly served by being placed on the front porch of the property." Shari and Stanley subsequently filed a *pro se* forcible entry and detainer complaint and, on May 16, 2009, asked the Chicago police department to "enforce the 5 day notice by having Plaintiff arrested for Criminal Trespass to Residence." On the same day, plaintiff was arrested and charged with criminal trespass to residence "by a criminal complaint of Stanley Lawrence." On December 28, 2009, the charge was nol-prossed by the State. However, Stanley would not permit plaintiff to retrieve his personal property from the residence.

¶ 13    The federal complaint alleged a section 1983 (42 U.S.C. § 1983 (2006)) claim against the police officers for false arrest and imprisonment. The complaint additionally stated state-law claims against Stanley for false imprisonment and malicious prosecution and state-law claims against Stanley and Shari for intentional infliction of emotional distress and wrongful eviction.

¶ 14    Finally, attached to the motion for summary judgment was a copy of the federal district court's March 30, 2013, memorandum opinion and order in the federal case, in which the district court granted the police officers' motion for summary judgment, granted Shari's motion for summary judgment, and denied Stanley's motion for summary judgment. In the opinion, the district court noted:

> "The events at issue in this case took place in March and April 2009. [Plaintiff] was fifty-nine years old at the time. Frances was in an extended care facility following treatment in a hospital for cancer. [Plaintiff] contends that Stanley and Shari, Frances's children, took advantage of her and obtained from her a revocation of the power of attorney that Frances had granted to [plaintiff], as well as a new power of attorney naming Shari with Stanley as her successor and a quitclaim deed conveying her home to Shari and Stanley. [Plaintiff] questions the authenticity of Frances' purported signature on these documents (the signature is an 'X')."

Additionally, after noting that it was granting summary judgment on the section 1983 claim, which was the only federal claim in the case, the district court stated that it would retain jurisdiction over the state-law claims and proceed to trial on those claims. The motion for summary judgment then contained a "notification of docket entry" dated May 29, 2013, indicating that the case was dismissed with prejudice pursuant to a settlement agreement between the parties.

¶ 15    On June 6, 2014, the trial court entered an order granting Stanley's motion for summary judgment and Shari's motion to dismiss, finding that "[t]he Release at issue in the motions governs Plaintiff's claim" and dismissing the complaint with prejudice. On July 7, 2014, plaintiff filed a notice of appeal,[2] and this appeal follows.

---

[2]Since July 6, 2014, the thirtieth day following the trial court's order, was a Sunday, plaintiff's notice of appeal, filed on Monday, July 7, 2014, was timely. See 5 ILCS 70/1.11 (West 2012) ("The time within which any act provided by law is to be done shall be computed by excluding the first day

On appeal, plaintiff argues that (1) his lawsuit was not barred by the doctrine of *res judicata* and (2) his lawsuit was not encompassed by a release plaintiff had previously executed. We address plaintiff's argument concerning the release first, as the release serves as a basis for both Shari's motion to dismiss and Stanley's motion for summary judgment.

As an initial matter, defendants ask us to strike plaintiff's brief and affirm the trial court's judgment due to plaintiff's lack of compliance with applicable supreme court rules governing the contents of briefs on appeal. "Supreme court rules are not advisory suggestions, but rules to be followed." *In re Marriage of Hluska*, 2011 IL App (1st) 092636, ¶ 57 (citing *In re Estate of Michalak*, 404 Ill. App. 3d 75, 99 (2010)). In the case at bar, defendants are correct that plaintiff's brief fails to comply with the supreme court rules governing appellate briefs, and we may, within our discretion, dismiss his appeal for that reason. *In re Marriage of Hluska*, 2011 IL App (1st) 092636, ¶ 57. However, "striking an appellate brief, in whole or in part, is a harsh sanction and is appropriate only when the violations of procedural rules hinder our review." *Hall v. Naper Gold Hospitality LLC*, 2012 IL App (2d) 111151, ¶ 15 (citing *In re Detention of Powell*, 217 Ill. 2d 123, 132 (2005)). Here, we understand the issues raised in plaintiff's brief, so we choose not to dismiss plaintiff's appeal. Accordingly, we proceed to the merits of plaintiff's arguments on appeal.

## I. Standard of Review

In the case at bar, we are considering the trial court's grant of both a motion to dismiss and a motion for summary judgment. A motion to dismiss under section 2-619[3] admits the legal sufficiency of all well-pleaded facts but allows for the dismissal of claims barred by an affirmative matter defeating those claims or avoiding their legal effect. *Janda v. United States Cellular Corp.*, 2011 IL App (1st) 103552, ¶ 83 (citing *DeLuna v. Burciaga*, 223 Ill. 2d 49, 59 (2006)). When reviewing a motion to dismiss under section 2-619, "a court must accept as true all well-pleaded facts in plaintiffs' complaint and all inferences that can reasonably be drawn in plaintiffs' favor." *Morr-Fitz, Inc. v. Blagojevich*, 231 Ill. 2d 474, 488 (2008). Additionally, a cause of action should not be dismissed under section 2-619 unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to relief. *Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 277-78 (2003). For a section 2-619 dismissal, our standard of review is *de novo*. *Solaia Technology, LLC v. Specialty Publishing Co.*, 221 Ill. 2d 558, 579 (2006); *Morr-Fitz, Inc. v. Blagojevich*, 231 Ill. 2d 474, 488 (2008). *De novo* consideration means we perform the same analysis that a trial judge would perform. *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011). Additionally, even if the trial court dismissed on an improper ground, a reviewing court may affirm the dismissal if the record supports a proper ground for dismissal.

---

and including the last, unless the last day is a Saturday or Sunday \*\*\*, and then it shall also be excluded."); *People v. Lesure*, 408 Ill. App. 3d 12, 13 (2011) ("Because the thirtieth day following the trial court's order was a Sunday, defendant's notice of appeal was timely filed as provided in the Statute on Statutes.").

[3]We note that, although it did not specify it in the order itself, the trial court granted Shari's motion to dismiss under section 2-619, which was based on the release. The trial court's order did not address Shari's claim under section 2-615, which was based on the failure to state a cause of action for conversion.

*Raintree Homes, Inc. v. Village of Long Grove*, 209 Ill. 2d 248, 261 (2004) (when reviewing a section 2-619 dismissal, we can affirm "on any basis present in the record"); *In re Marriage of Gary*, 384 Ill. App. 3d 979, 987 (2008) ("we may affirm on any basis supported by the record, regardless of whether the trial court based its decision on the proper ground").

¶ 21   With respect to summary judgment, a trial court is permitted to grant summary judgment only "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2012). The trial court must view these documents and exhibits in the light most favorable to the nonmoving party. *Home Insurance Co. v. Cincinnati Insurance Co.*, 213 Ill. 2d 307, 315 (2004). We review a trial court's decision to grant a motion for summary judgment *de novo*. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992). Again, *de novo* consideration means we perform the same analysis that a trial judge would perform. *Khan*, 408 Ill. App. 3d at 578.

¶ 22   "Summary judgment is a drastic measure and should only be granted if the movant's right to judgment is clear and free from doubt." *Outboard Marine Corp.*, 154 Ill. 2d at 102. However, "[m]ere speculation, conjecture, or guess is insufficient to withstand summary judgment." *Sorce v. Naperville Jeep Eagle, Inc.*, 309 Ill. App. 3d 313, 328 (1999). The party moving for summary judgment bears the initial burden of proof. *Nedzvekas v. Fung*, 374 Ill. App. 3d 618, 624 (2007). The movant may meet his burden of proof either by affirmatively showing that some element of the case must be resolved in his favor or by establishing " 'that there is an absence of evidence to support the nonmoving party's case.' " *Nedzvekas*, 374 Ill. App. 3d at 624 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). " 'The purpose of summary judgment is not to try an issue of fact but *** to determine whether a triable issue of fact exists.' " *Schrager v. North Community Bank*, 328 Ill. App. 3d 696, 708 (2002) (quoting *Luu v. Kim*, 323 Ill. App. 3d 946, 952 (2001)). As with a motion to dismiss, we may affirm on any basis appearing in the record, whether or not the trial court relied on that basis or its reasoning was correct. *Ray Dancer, Inc. v. DMC Corp.*, 230 Ill. App. 3d 40, 50 (1992).

¶ 23                                                   II. Release

¶ 24   As noted, we first consider plaintiff's arguments concerning the release, as the release served as a basis for both Shari's motion to dismiss and Stanley's motion for summary judgment. In the case at bar, the trial court found that the release executed by plaintiff as part of the settlement of the federal case encompassed the claims raised in the instant state case. We agree with the trial court.

¶ 25   The release in the federal case was signed by plaintiff on June 10, 2013. The release is entitled "Release of All Claims Against Stanley Lawrence" and provides, in pertinent part:

> "In consideration of the payment of One Hundred Two, Seven Hundred Fifty Thousand Dollars ($102,750), Plaintiff, JAMES MILLER, does hereby release Defendant, STANLEY LAWRENCE, and all of his heirs, relatives, executors, administrators, successors, assigns, agents, employees, insurance carriers, of and from any causes of action and claims for wrongful eviction, malicious prosecution, intentional infliction of emotional distress, personal injuries, property loss, will contests, demands, costs, loss of services, expenses, compensation, damages, and any other claims or causes of action whether or not presently known, direct or vicarious, pending or threatened, which he now has or may have hereafter on account of, arising

out of or relating to any of the matters alleged or which could have been alleged and tried in the lawsuit entitled JAMES MILLER v. STANLEY LAWRENCE, filed in the United Stated District Court for the Northern District of Illinois as Case No. 11 C 01520, including without limitation, any demand, claim, or cause of action on account of, arising out of, or relating to the property located at *** South Wabash, Chicago, Illinois and JAMES MILLER's removal from it. ***

*** 

This Release contains the ENTIRE AGREEMENT between the parties hereto, and the terms of this Release are contractual and not a mere recital. The undersigned have CAREFULLY READ this release, fully understand it, and sign this as the free and voluntary act of the undersigned."

¶ 26 A release " 'is the abandonment of a claim to the person against whom the claim exists.' " *Thornwood, Inc. v. Jenner & Block*, 344 Ill. App. 3d 15, 21 (2003) (quoting *Hurd v. Wildman, Harrold, Allen & Dixon*, 303 Ill. App. 3d 84, 88 (1999)); *Fuller Family Holdings, LLC v. Northern Trust Co.*, 371 Ill. App. 3d 605, 614 (2007). It is a contract and is therefore governed by contract law. *Farm Credit Bank of St. Louis v. Whitlock*, 144 Ill. 2d 440, 447 (1991) (citing *Polo National Bank v. Lester*, 183 Ill. App. 3d 411, 414 (1989)). Where a contract is clear and explicit, a court must enforce it as written, and the meaning of the contract, as well as the intention of the parties, must be gathered from the document without the assistance of extrinsic aids. *Rakowski v. Lucente*, 104 Ill. 2d 317 (1984); *Fuller Family*, 371 Ill. App. 3d at 614; *Shultz v. Delta-R. Corp.*, 156 Ill. App. 3d 1, 10 (1987). However, a release will not be construed to include claims that were not within the contemplation of the parties. *Carlile v. Snap-on Tools*, 271 Ill. App. 3d 833, 838 (1995) (citing *Carona v. Illinois Central Gulf R.R. Co.*, 203 Ill. App. 3d 947, 951 (1990)). " '[N]o form of words, no matter how all encompassing, will foreclose scrutiny of a release [citation] or prevent a reviewing court from inquiring into surrounding circumstances to ascertain whether it was fairly made and accurately reflected the intention of the parties.' " *Carlile*, 271 Ill. App. 3d at 839 (quoting *Ainsworth Corp. v. Cenco, Inc.*, 107 Ill. App. 3d 435, 439 (1982)).

¶ 27 In the case at bar, plaintiff argues that the claims asserted in the instant state suit were not encompassed by the release executed in the federal suit. He claims that the release was limited to " 'all claims arising out of the Federal Suit,' " and argues that "[s]ince all parties were aware *** of the pending state claims regarding the insurance policies and the bank account, a reasonable person could argue that those claims in another court were excepted from the Release." We do not find this argument persuasive.

¶ 28 First, despite plaintiff's contention, the language of the release was not limited to " 'all claims arising out of the Federal Suit.' " Instead, the release released Stanley and his relatives[4] "from any causes of action *** whether or not presently known, direct or vicarious, pending or threatened, which he now has or may have hereafter *on account of, arising out of or relating to any of the matters alleged or which could have been alleged and tried in the [federal lawsuit]*, including without limitation, any demand, claim, or cause of action on account of, arising out of, or relating to the property located at *** South Wabash, Chicago, Illinois and JAMES MILLER's removal from it." (Emphasis added.) Plaintiff admits, as he must, that the cause of action alleged in the instant state lawsuit was "presently known" at the time of the June 10,

_____

[4]Plaintiff does not dispute that the release was also applicable to Shari, as Stanley's relative.

2013, execution of the release, given that he had filed the state lawsuit on January 8, 2013, five months before the execution of the release. Thus, so long as the conversion claim alleged in the state lawsuit was "on account of, arising out of or relating to any of the matters alleged or which could have been alleged and tried" in the federal lawsuit, such a claim would have been encompassed by the release. We agree with defendants that it was.

¶ 29    As defendants point out, the claims alleged in the instant state lawsuit could have been raised in the federal lawsuit and were certainly related to the claims in that suit. In the federal lawsuit, plaintiff raised claims arising from the revocation of his power of attorney and the subsequent appointment of Shari as Frances' power of attorney. Specifically, plaintiff alleged that Shari and Stanley used Shari's power of attorney to evict plaintiff from Frances' property, where plaintiff had been living for over 16 years. Similarly, in the state lawsuit, plaintiff's allegations also arise from the same revocation of plaintiff's power of attorney and the appointment of Shari as Frances' power of attorney; here, plaintiff is alleging that Shari and Stanley used Shari's power of attorney to collect the funds under Frances' annuity and life insurance policies and to withdraw funds from Frances' bank account. Thus, there is no reason why plaintiff's current claims could not have been included in the federal lawsuit, and accordingly, they are encompassed within the terms of the release.[5]

¶ 30    We are also not persuaded by plaintiff's argument that "[s]ince all parties were aware *** of the pending state claims regarding the insurance policies and the bank account, a reasonable person could argue that those claims in another court were excepted from the Release." As noted, a release will not be construed to include claims that were not within the contemplation of the parties. *Carlile*, 271 Ill. App. 3d at 838 (citing *Carona v. Illinois Central Gulf R.R. Co.*, 203 Ill. App. 3d 947, 951 (1990)). However, the fact that a claim is not specifically listed in a release does not necessarily preclude that claim from having been within the contemplation of the parties and therefore barred. See, *e.g.*, *Rakowski v. Lucente*, 104 Ill. 2d 317, 323 (1984) ("[t]here is no basis for [the defendants's] argument that the release did not include a specific type of action *** because that right was not expressly enumerated. When employing a release as broad as the one used here, any attempt to list the specific types of action included in the release might have detracted from its broad and general scope."); *Gavery v. McMahon & Elliott*, 283 Ill. App. 3d 484, 488-89 (1996) (rejecting an argument that the plaintiff's specific malpractice claims were not within the contemplation of the parties because he released all claims, which included the malpractice claims); *Chubb v. Amax Coal Co.*, 125 Ill. App. 3d 682, 686 (1984) (finding that the release barred all claims in existence arising under an insurance policy, whether known or unknown). "[W]here both parties were aware of an additional claim at the time of signing the release, courts have given effect to the general release language of the agreement to release that claim as well." *Farm Credit*, 144 Ill. 2d at 447. In the case at bar, both parties were admittedly aware of the existence of the claims alleged in the instant state lawsuit at the time that the release was executed. Additionally, the language of the release contains no basis for interpreting the release to include an "except[ion]" for the claims in this lawsuit, as plaintiff asks us to find. Accordingly, the language of the release operates to bar those claims, and the trial court did not err in granting Shari's motion to dismiss and Stanley's motion for

---

[5]We note that the federal district court chose to retain jurisdiction over the state-law claims in the federal lawsuit even after summary judgment was granted on the only federal claim.

summary judgment.

¶ 31                                III. *Res Judicata*

¶ 32        Plaintiff also argues that the instant state lawsuit was not barred by the doctrine of *res judicata*. However, as we have determined that the trial court properly granted Shari's motion to dismiss and Stanley's motion for summary judgment based on the language of the release, we have no need to consider whether the claims were also barred by *res judicata*.

¶ 33                                   CONCLUSION

¶ 34        The trial court's grant of Shari's motion to dismiss and Stanley's motion for summary judgment is affirmed where the language of the release executed in the federal lawsuit encompasses the claims alleged in the instant state lawsuit and all parties were admittedly aware of that lawsuit at the time of the execution of the release.

¶ 35        Affirmed.