2020 IL App (1st) 190325-U

FIFTH DIVISION
Order filed: February 26, 2021

No. 1-19-0325

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| DEBRA WASHINGTON, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant and Cross-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 17 L 4321 |
| | ) | |
| FLASH ACQUISITIONS, LLC and JERRY STOEV, | ) | |
| | ) | |
| Defendants-Appellees | ) | Honorable |
| | ) | Brigid Mary McGrath, |
| (Flash Acquisitions, LLC, Cross-Appellant). | ) | Judge, presiding. |

JUSTICE HOFFMAN delivered the judgment of the court.
Justices Cunningham and Rochford concurred in the judgment.

**ORDER**

¶ 1    *Held*:   We vacated the circuit court's grant of summary judgment in favor of the individual defendant and against the plaintiff, and we reversed the court's grant of summary judgment in favor of the plaintiff and against the corporate defendant and we vacated the award of attorney fees in favor of the plaintiff. We remanded the matter for further proceedings

¶ 2    The plaintiff, Debra Washington, appeals from an order of the circuit court of Cook County, denying her motion for summary judgment against Jerry Stoev. She contends that the circuit court erred when it denied her motion for summary judgment. Flash Acquisition, LLC (Flash) cross-appeals, arguing that the circuit court erred when it granted summary judgment in favor of the plaintiff and when it denied its motion to reconsider based on newly discovered evidence. For the reasons that follow, we vacate the circuit court's grant of summary judgment in favor of Stoev and against the plaintiff, and we reverse the grant of summary judgment in favor of the plaintiff and against Flash and vacate the award of attorney fees in favor of the plaintiff and remand the matter for further proceedings.

¶ 3    The following facts relevant to the disposition of this appeal and cross-appeal were derived from the pleadings and exhibits of record.

¶ 4    The plaintiff became a tenant of the property located at 7926 South Laflin Street (the property) in September 2013. At the time, the property was owned by Everett Burnett. In February 2015, the plaintiff signed a one-year lease agreement with Burnett that was governed by the federal section 8 Housing Choice Voucher (HCV) program administered by the Chicago Housing Authority (CHA). The plaintiff's rent was $1200 per month. At the expiration of the one-year rental agreement, the plaintiff continued to rent the property from Burnett but there was no written rental agreement.

¶ 5    Unbeknownst to the plaintiff, the property became the subject of foreclosure proceedings. On May 13, 2016, Flash obtained the property pursuant to a judicial sale. After purchasing the property, Flash learned from Burnett that the plaintiff was residing at the property as a tenant. On July 31, 2016, Stoev, Flash's managing member and sole employee, met with the plaintiff and

presented her with a one-year lease agreement with a monthly rent of $1200. When the plaintiff told Stoev that she could not accept the lease "at that point," he presented her with a 90-day termination of tenancy notice, which stated that Flash intended to file a forcible entry and detainer action against her and a demand for possession.

¶ 6    On November 16, 2016, Flash filed an action for forcible entry and detainer against the plaintiff (case no. 16 M1 719692). That action was ultimately dismissed with prejudice on December 14, 2016. The following day, the plaintiff vacated the premises and tendered the keys to Flash. Flash did not provide the plaintiff any financial support for relocation assistance after she moved out.

¶ 7    On April 28, 2017, the plaintiff filed a two-count complaint against Flash, alleging that it committed two violations of the City of Chicago's Protecting Tenants in Foreclosed Rental Property Ordinance (the ordinance). In count I, the plaintiff alleged that Flash violated section 5-14-050 of the ordinance (Chicago Municipal Code § 5-14-050 (amended Apr. 15, 2015)), which requires the new owner of a foreclosed rental property to pay a "qualified tenant" $10,600 in relocation assistance when the owner elects not to renew or extend the tenant's rental agreement. In count II, the plaintiff alleged that Flash also violated section 5-14-050 of the ordinance by failing to inform her via letter within 63 days of acquiring ownership of the property whether it had elected to either renew her rental agreement or provide her with relocation assistance.

¶ 8    On November 16, 2017, Flash filed a motion to strike the plaintiff's prayer for relief pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2016)), arguing that the plaintiff's two claims should be merged into one because the ordinance does not allow her to "stack" her damages and recover for each violation. On March 8, 2017, the circuit court entered

an order granting Flash's motion and allowing the plaintiff to amend her complaint to reflect that Count II is pled in the alternative.

¶ 9     On April 30, 2018, and May 16, 2018, the plaintiff took the discovery deposition of Stoev as Flash's corporate representative. Also on May 16, 2018, the plaintiff filed her first amended complaint, which added Stoev as a defendant. The amended complaint alleged the same two counts as the initial complaint, however, the plaintiff now pled count II in the alternative.

¶ 10    The defendants filed their joint answer on June 25, 2018, denying that they failed in their obligations under the ordinance. The defendants raised as an affirmative defense that the plaintiff was offered a valid lease on July 31, 2016, which she rejected. Stoev also raised as an affirmative defense that he did not qualify as an "owner" under the ordinance and, therefore, could not be held personally liable.

¶ 11    On June 28, 2018, the plaintiff filed a motion for summary judgment against the defendants on both counts of her amended complaint. The plaintiff argued that (1) she met the ordinance's definition of a qualified tenant because she lived at the property pursuant to a bona fide rental agreement with Burnett; (2) the defendants are both "owners" under the ordinance; (3) the defendants failed to provide her with the required notice advising her of their election to either continue with her tenancy or provide her with relocation assistance within 63 days; and (4) the defendants failed to pay her the statutorily required relocation assistance. In support of her motion, the plaintiff attached, *inter alia*, portions of Stoev's discovery deposition testimony and the defendants' joint answer to her complaint.

¶ 12    The defendants filed a joint response in opposition to the plaintiff's motion for summary judgment on July 31, 2018. In their response, the defendants argued that (1) the plaintiff was not

a qualified tenant under the ordinance because her $1200 rent was substantially below market value; (2) she was not entitled to relocation assistance because she rejected Flash's July 31, 2016 offer of a rental agreement; and (3) Stoev is not liable for any potential damages because he is not an "owner" as defined by the ordinance. In the defendants' prayer for relief, they asked only that the court deny the plaintiff's motion for summary judgment against them.

¶ 13    The plaintiff filed a reply, arguing that she was a qualified tenant under the ordinance because her rent was subsidized by the CHA pursuant to the HCV program, and as a result, she was not required to prove her rent was not substantially below market value. She argued, alternatively, that her rent was not substantially less than fair market value because her monthly rental rate did not "shock the conscience" and her participation in the HCV program meant that, pursuant to federal law, the CHA had determined her rent was "reasonable."

¶ 14    The court held a hearing on the plaintiff's motion for summary judgment on September 12, 2018. After hearing argument from both sides, the court stated that it was granting summary judgment in favor of the plaintiff and against Flash and "denying it" against Stoev. The court then asked Stoev's counsel if his prayer for relief asked for an entry of judgment against the plaintiff. Counsel responded that he asked only for a denial of summary judgment, but he thought that the case against Stoev should be "dismissed" and asked if he should file a motion to that effect. The court replied that it was entering judgment "in favor of the plaintiff and against [Flash], and then in favor of [Stoev] and against the plaintiff ***" and "ending the case today."

¶ 15    That same day, the circuit court entered an order, which the plaintiff's counsel drafted, that: (1) granted the plaintiff's motion for summary judgment against Flash on both counts and awarded the plaintiff $31,800 in statutory damages; (2) denied the plaintiff's motion for summary judgment

against Stoev because it found he was not an "owner" as defined in the ordinance; (3) found there was no genuine issue of material fact; and (4) continued the proceedings until the plaintiff files a petition for attorney fees. The order did not mention a judgment entered in favor of Stoev against the plaintiff.

¶ 16    On October 9, 2018, the plaintiff filed a petition for attorney fees, requesting $46,880. That same day, Flash filed a motion to reconsider, arguing that (1) it obtained newly discovered evidence that the plaintiff's lease was no longer subsidized by the CHA when Flash acquired the property; (2) the plaintiff lived rent free for several months, and therefore, she should not be entitled to relocation assistance; and (3) the plaintiff's award exceeds the allowable amount under the ordinance.

¶ 17    In support, Flash attached the affidavit of the property's former owner, Everett Burnett. According to Burnett, the property failed the annual section 8 inspection in January 2016, and he was required to make repairs to the property and undergo another inspection, which he failed to complete because the plaintiff refused to allow him access to the property. He stated that, because the repairs were never completed and the home never reinspected, "the Secton [*sic*] 8 Tenant-Based Assistance [HCV] Program abated at the end of the lease on 2/29/2017" and "the CHA stopped making any payments" to subsidize the plaintiff's rent. He also stated that, "[u]nder CHA procedures, the section 8 voucher program automatically terminated 60 days later on 4/30/2017." Burnett averred that he went to CHA and spoke with an employee there who confirmed that "the abatement occurred when the lease ended on 2/29/2016 and that the Section 8 Voucher Program ended for the property 60 days later on 4/30/18."

¶ 18    The plaintiff filed a response to Flash's motion to reconsider on November 21, 2018, arguing both that Flash's evidence was not newly discovered, and it was not so conclusive or decisive that a different outcome was probable. As to whether the evidence was newly discovered, the plaintiff argued that Flash did not exercise due diligence to ascertain the plaintiff's status with the CHA earlier in the litigation. Specifically, the plaintiff contended that Stoev failed to explain why he did not obtain this information from Burnett earlier given that Stoev testified at his deposition that he had been in contact with Burnett since shortly after Flash purchased the property. She also faulted Flash for failing to direct any "discovery requests to [her] regarding her relationship with CHA." Lastly, she noted that Stoev's May 16, 2018 deposition testimony established that the defendants, in fact, did know that the plaintiff was in abatement with CHA due to the property failing an inspection and simply failed to raise the issue during summary judgment. In support of her final argument, the plaintiff attached a portion of Stoev's May 16, 2018 discovery deposition in which he was asked whether he knew the plaintiff's status with the CHA and he responded "abatement" due to "the property fail[ing] a new inspection."

¶ 19    Regarding the conclusiveness of the evidence, the plaintiff argued that, even if the CHA terminated its relationship with Burnett prior to Flash purchasing the property, her rent was still "established" under a government subsidy program, and therefore, she is still a qualified tenant under the ordinance. She also argued that, even if her rent is not subsidized by the government, she is still a qualified tenant because her rent was not substantially less than the market rate. Lastly, the plaintiff took issue with several portions of Burnett's affidavit, such as the fact that it provides inconsistent dates for when the plaintiff's participation in the program terminated, it does not

establish that Burnett is qualified to speak to CHA policies, and it contains inadmissible statements allegedly made by a CHA employee.

¶ 20    On January 16, 2019, the circuit court entered an order denying Flash's motion to reconsider and granting the plaintiff's petition for attorney fees in the amount of $47,960.

¶ 21    On February 15, 2019, the plaintiff filed a notice of appeal, stating that she was appealing the circuit court's September 12, 2018 order denying her motion for summary judgment against Stoev. On February 25, 2019, Flash filed a notice of cross-appeal, stating that it was appealing "all aspects" of the circuit court's grant of summary judgment in favor of the plaintiff.

¶ 22    On November 20, 2020 this court entered an order dismissing both the plaintiff's appeal and Flash's cross-appeal for want of jurisdiction on the grounds that the denial of a motion for summary judgment from which the plaintiff appealed is not a final and appealable order. On December 10, 2020, the plaintiff filed a petition for rehearing, arguing that this determination was in error because the circuit court, during the hearing on her motion for summary judgment, granted Stoev's oral cross-motion for summary judgment, which is a final and appealable order. We entered an order requiring the defendants to answer the petition for rehearing and providing the plaintiff an opportunity to reply. After considering this briefing, we granted the petition for rehearing.

¶ 23    On appeal, the plaintiff argues that the circuit court erred when it granted Stoev's cross-motion for summary judgment.

¶ 24    As an initial matter, we note that neither party made any reference to the circuit court having granted Stoev's oral cross-motion for summary judgment in their briefs to this court. Nor does the order entered by the circuit court on September 12, 2018, which the plaintiff's counsel

drafted, state that the court entered summary judgment in favor of Stoev. In short, the plaintiff's first reference to an entry of summary judgment in favor of Stoev was in her petition for rehearing.

¶ 25    Nevertheless, after reviewing the transcript, we conclude that the circuit court did grant summary judgment in favor of Stoev, even though Stoev never requested such an order. The record shows that, when asked, Stoev's counsel told the court his prayer for relief did not request summary judgment and that he wanted the plaintiff's claims against his client dismissed. In response, the circuit court stated that it was "entering judgment" in Stoev's favor and "ending the case" so that it could "get this case up faster." The record, therefore, establishes that the circuit court did enter summary judgment in favor of Stoev. Accordingly, we do have jurisdiction to consider the plaintiff's appeal.

¶ 26    That said, we must address whether it was proper for the circuit court to enter summary judgment in Stoev's favor, even though he never requested such relief. Section 2-1005 of the Code of Civil Procedure makes clear that summary judgment may not be granted in favor of a party unless that party requests it. See 735 ILCS 5/2-1005(a), (b) (West 2018); see also *Peterson v. Randhava*, 313 Ill. App. 3d 1, 10 (2000) (Section 2-1005 "provide[s] guidelines for either the plaintiff or the defendant to move for summary judgment" but does not "authorize the court to dispose of the case as a matter of law, absent a request by one of the parties."). As mentioned above, Stoev's prayer for relief did not request summary judgment and his counsel asked only that the court dismiss the claims. At no point during the colloquy did he move for summary judgment against the plaintiff. Thus, it was improper for the circuit court to *sua sponte* enter summary judgment in Stoev's favor. Consequently, we vacate the circuit court's entry of summary judgment in favor of Stoev.

¶ 27    We turn next to the merits of Flash's cross-appeal. Flash argues that the circuit court erred when it granted the plaintiff's motion for summary judgment and denied its motion to reconsider.

¶ 28    As a threshold matter, we note that Flash's brief fails to comply with Illinois Supreme Court Rule 341 (eff. May 25, 2018). Supreme Court Rule 341 requires an appellant, or in this case a cross-appellant, to provide, *inter alia*, a statement of jurisdiction, a section quoting the relevant statutes involved, and an argument section with citations to relevant authority and to the relevant portions of the record. Ill. S. Ct. Rule 341(h)(4), (5), (7) (eff. May 25, 2018); *Weidner v. Szostek*, 245 Ill. App. 3d 487 (1993).

¶ 29    Here, Flash's brief does not contain a jurisdictional statement, nor does it contain a section where the relevant statutes, such as the ordinance, are quoted verbatim. Moreover, Flash's 14-page argument section includes only two case citations: one for the standard of review and the other for the general law for granting summary judgment. The argument section also cites sparingly to the record. Compliance with supreme court rules is mandatory, and noncompliance "is not an inconsequential matter." *People v. Hall*, 2012 IL App (2d) 111151, ¶ 7. As a reviewing court, we are entitled to have the issues clearly defined, pertinent authority cited, and a cohesive legal argument presented. *Walters v. Rodriguez*, 2011 IL App (1st) 103488, ¶ 5. "The appellate court is not a depository in which the appellant may dump the burden of argument and research." *Thrall Car Manufacturing Co. v. Lindquist*, 145 Ill. App. 3d 712, 719 (1986). A "brief that lacks any substantial conformity" to this Rule "may justifiably be stricken." *Id*.; see *People v. McCann*, 2015 IL App (1st) 141291, ¶ 12. Put simply, Flash's brief fails to substantially comply with Rule 341. That said, we do not find it necessary to strike Flash's brief and dismiss its appeal for failure to

comply because its errors did not significantly hinder our review, although they did make it considerably more burdensome.

¶ 30    Flash's arguments on cross-appeal are the following: (1) the plaintiff failed to produce competent evidence supporting several elements of her claims; (2) there is a genuine issue of material fact as to whether the plaintiff's rent was substantially below market value; and (3) the circuit court erred when it denied its motion to reconsider based on newly discovered evidence. Flash raises several additional arguments in its brief on cross-appeal, however, we have deemed them forfeited because Flash failed to raise the issues below. *State ex rel. Pusateri v. Peoples Gas Light & Coke Co.*, 2014 IL 116844, ¶ 22 ("Issues not raised below may be forfeited ***."). We first address whether the circuit court erred in granting the plaintiff's motion for summary judgment.

¶ 31    Summary judgment is an appropriate means of disposing of a cause of action where the pleadings, depositions, admissions, together with the affidavits on file, viewed in a light most favorable to the nonmoving party, demonstrate the absence of a genuine issue of material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2–1005(c) (West 2016); *Coleman v. East Joliet Fire Protection District*, 2016 IL 117952, ¶ 20. The movant may meet his burden of proof either by affirmatively showing that some element of the case must be resolved in his favor or by establishing that there is an absence of evidence to support the nonmoving party's case. (Internal quotation marks omitted.) *Miller v. Lawrence*, 2016 IL App (1st) 142051, ¶ 22. The purpose of summary judgment is not to try an issue of fact but to determine whether a triable issue of fact exists. *Id.* We review a circuit court's order granting summary judgment *de novo. Id.*

¶ 32    The ordinance specifies that the new owner of a foreclosed rental property is required to notify a tenant of the change of ownership within 21 days of the change or within 7 days of determining the tenant's identity. Chicago Municipal Code § 5-14-040(a) (amended Apr. 15, 2015). The new owner is also required to pay a "qualified tenant" a one-time relocation assistance fee of $10,600, unless the new owner offers to renew or extend the rental agreement at a rate that is no more than 102% of the current annual rental rate. *Id.* § 5-14-050(a), (b) (amended Apr. 15, 2015). To enable the owner to determine whether the tenant is "qualified tenant," the ownership change notice is to be accompanied by a "Tenant Information Disclosure Form," and within 21 days of receipt, the tenant is to complete and return the form. *Id.* § 5-14-040(b) (amended Apr. 15, 2015). Regardless of whether the tenant returns the form, the next step in the process is for the owner or agent to communicate whether the tenancy may be continued. The ordinance provides:

> "No later than 21 days after the date upon which the tenant returns or should have returned the Tenant Information Disclosure Form pursuant to Section 5-14-040, the owner shall send a written: (1) notice to a Qualified tenant advising the qualified tenant that the owner is paying the required relocation fee: or (ii) offer to extend or renew the qualified tenant's rental agreement, or provide a rental agreement for a replacement rental unit, whichever is applicable, with an annual rental rate in an amount that complies with subsection (a). All notices or offers shall clearly show the date the offer or notice was sent." *Id.* § 5-14-050(a)(3) (amended Apr. 15, 2015).

The tenant then has 21 days after receipt to accept. *Id.* § 5-14-050(a)(3) (amended Apr. 15, 2015).

¶ 33    The combined effect of these provisions is that, within 63 days of the change of ownership, the new owner must provide a qualified tenant with written notice indicating whether the owner

has elected to renew the lease or provide the tenant with relocation assistance. The owner's failure to pay for relocation or offer the tenant the option to renew or extend the tenancy permits the qualified tenant to "bring a private right of action in a court of competent jurisdiction," where, "[i]n addition to any other fine or penalty provided," the prevailing plaintiff "shall be awarded damages in an amount equal to two times the relocation assistance fee" (*Id.* § 5-14-050(f) (amended Apr. 15, 2015)) and "shall be entitled to recover *** reasonable attorney's fees" (*Id.* § 5-14-070 (added June 5, 2013)).

¶ 34     The ordinance defines an owner as

> "any person who alone, or jointly or severally with others, is: (1) pursuant to a judicial sale of a foreclosed rental property, the purchaser of the foreclosed rental property after the sale has been confirmed by the court and any special right of redemption has expired ***. 'Owner' includes the owner and his agent for the purpose of managing, controlling or collecting rents."

¶ 35     It is undisputed that Flash qualifies as an owner under the ordinance, as it purchased a foreclosed rental property. In addition, the undisputed facts establish that Flash failed to provide notice to the plaintiff within the 63-day timeframe indicating whether it would continue her tenancy or provide her with relocation assistance. Flash purchased the property on May 13, 2016. Thus, under the ordinance, it was required to provide the plaintiff with written notice of its decision by July 15, 2016. Flash stipulated that it never sent such a notice within that timeframe. Rather, Stoev met with the plaintiff on July 31, 2016, and offered to continue her tenancy, but when she told him that she could not accept the offer "at that point," he presented her with a termination of tenancy notice. Flash also admitted that, when the plaintiff moved out of the property, it did not

provide her with relocation assistance. The ordinance's 63-day deadline imposes a "mandatory obligation" requiring "strict compliance." *Norman v. U.S. Bank National Association as Trustee for Structured Asset Mortgage. Investments II, Inc.*, 2020 IL App (1st) 190765, ¶ 33. Given that the undisputed facts establish that Flash failed to strictly comply with the ordinance, the only issue in dispute is whether the plaintiff met the qualified tenant criteria.

¶ 36    Section 5-14-020 of the ordinance defines a qualified tenant as a person who:

"(1) is a tenant in a foreclosed rental property on the day that a person becomes the owner of that property; and (2) has a bona fide rental agreement to occupy the rental unit as the tenant's principal residence.

For purposes of this definition:

(1) a rental agreement shall be considered bona fide only if:

(i) the mortgagor, or any child, spouse, or parent of the mortgagor residing in the same dwelling unit with the mortgagor, is not the tenant;

(ii) the rental agreement was a result of an arms-length transaction; and

(iii) the rental agreement requires the receipt of rent that is not substantially less than fair market rent for the property, or the rental unit's rent is reduced or subsidized due to a government subsidy." Chicago Municipal Code § 5-14-020 (amended Apr. 15, 2015).

¶ 37    Flash argues that the plaintiff failed to present any evidence that she met the qualified tenant criteria, and therefore, she was not entitled to summary judgment. Specifically, Flash faults the plaintiff for failing to verify her amended complaint or providing her own sworn deposition testimony in support of her claims. The plaintiff responds that she was not required to verify her

complaint or provide a sworn affidavit where Flash's judicial admissions established that it had violated the ordinance.

¶ 38     The plaintiff is correct that she was under no obligation to verify her complaint or provide a sworn affidavit in order to prevail at the summary judgment stage. See 735 ILCS 5/2-1005 (West 2018) ("[A] plaintiff may move with or without supporting affidavits for a summary judgment in his or her favor for all or any part of the relief sought.). She is also correct that she may rely on Flash's admissions to carry her burden on summary judgment. *North Shore Community Bank & Tust. Co. v. Sheffield Wellington LLC*, 2014 IL App (1st) 123784, ¶ 102 ("[I]f a fact is judicially admitted, the adverse party has no need to submit any evidence on that point.").

¶ 39     That said, not just any admission will alleviate the plaintiff of her obligation to present evidence proving her case. A judicial admission is "a deliberate, clear, unequivocal statements by a party about a concrete fact within that party's knowledge." *In re Estate of Rennick*, 181 Ill. 2d 395, 406, 692 N.E.2d 1150, 1156 (1998). Here, the plaintiff was required to prove that she was a qualified tenant, which means she had to present evidence that: (1) she was not a child, spouse, or parent of Burnett; (2) her rental agreement with Burnett was the result of an arm's-length transaction; and (3) her rent was not substantially below market value or her rent was reduced or subsidized by a government subsidy.

¶ 40     The plaintiff argues that Flash admitted to elements one and three, and as a result, she did not need to present evidence of those facts. As to the first element, we agree that Flash admitted in its joint answer that the plaintiff was not a child, spouse, or parent of Burnett, which removed the plaintiff's obligation to present evidence of that fact. However, we disagree with the plaintiff

that Flash admitted that, when it purchased the property, her rent was reduced or subsidized by a government subsidy.

¶ 41    In her motion for summary judgment, the plaintiff claimed that Flash admitted to this fact in its joint answer to her amended complaint and cited to the following admission:

"The lease was governed by the federal Section 8 Housing Choice Voucher ("HCV") program. The tenancy between Plaintiff and Burnett was, thereafter, pursuant to and incorporated the Housing Assistance Payment contract ("HAP") between Burnett and the CHA, under the federal Section 8 HCV program, which is administered nationally by the United States Department of Housing and Urban Development ("HUD"). Both Burnett and Plaintiff, as landlord and tenant respectively, were participants in the Section 8 program."

¶ 42    However, upon review, we conclude that Flash admitted only that the one-year lease signed by the plaintiff and Burnett for the period of February 20, 2015, to February 29, 2016, was governed by the HCV program. The defendants answered that they had insufficient knowledge to admit or deny whether her lease then "converted to an oral month-to-month rental agreement" that was acceptable under the HCV program. This subsequent month-to-month rental agreement was the one in effect when Flash purchased the property and Flash has not admitted that this agreement was part of the HCV program.

¶ 43    The defendants made a similar statement in their joint response to the plaintiff's motion for summary judgment, stating: "When FLASH bought the subject property [the plaintiff] was living there pursuant to *an expired written lease with the former owner*, with [*sic*] rent $1,200.00 per month. Plaintiff's rent was subsidized entirely or in part by [CHA]." (Emphasis added.) We

conclude that the defendants' statement, when read in conjunction with their joint answer to the plaintiff's amended complaint, is not a clear admission that the plaintiff's rent was subsidized by the government at the time Flash purchased the property. Rather, the defendants' admitted that the plaintiff's initial written lease was subsidized as part of the HCV program. We also note that whether the plaintiff's lease was subsidized by the government at the time Flash purchased the property would not constitute a fact uniquely within the defendants' personal knowledge. See *In re Estate of Rennick*, 181 Ill. 2d 395, 406, 692 N.E.2d 1150, 1156 (1998) ("A judicial admission is "a deliberate, clear, unequivocal statements by a party about a concrete fact within that party's knowledge."). Because the plaintiff failed to either present evidence of this fact or point to a judicial admission alleviating her of that obligation, there is a genuine issue of a material fact as to whether her lease was reduced or subsidized by a government subsidy.

¶ 44 Next, we address whether the plaintiff presented evidence that her rental agreement with Burnett was the result of an arm's-length transaction. The plaintiff does not contend that Flash admitted this fact. Rather, the plaintiff cites to the Code of Federal Regulations, which requires that the public housing agency "may not give approval for the family of the assisted tenancy *** until [it] has determined that *** the rent to owner is reasonable." 24 C.F.R. § 982.302(c). According to the plaintiff, "[t]he presence of an objective, publicly accountable third-party—the CHA—that reviewed the transaction for reasonableness and undue favoritism confirms that [her] tenancy with Everett Burnett was the result of an arm's-length transaction." As discussed above, Flash admitted only that the plaintiff's initial written lease with Burnett was governed by the HCV program. At the time Flash purchased the property, she was not living at the property pursuant to that lease, but, rather, pursuant to an "oral month-to-month" rental agreement. As such, even if we

were to agree with the plaintiff that her participation in the HCV program satisfied her burden of proving an arm's-length transaction, she has not presented evidence that her oral month-to-month rental agreement with Burnett, which was in effect when Flash obtained the property, was governed by the HCV program.

¶ 45    In sum, we find that there is a genuine issue of material fact as to whether the plaintiff was a qualified tenant under the ordinance. Specifically, the plaintiff failed to present evidence regarding whether her oral month-to-month rental agreement with Burnett was the result of an arm's-length transaction and whether her rent was reduced or subsidized by a government subsidy when Flash purchased the property. Consequently, we reverse the circuit court's grant of summary judgment in favor of the plaintiff and against Flash. Having reversed the entry of summary judgment in the plaintiff's favor, we also vacate the circuit court's January 16, 2019 order granting the plaintiff's petition for attorney fees in the amount of $47,960.

¶ 46    For the forgoing reasons, we vacate the summary judgment entered in favor of Stoev and against the plaintiff and reverse the summary judgment entered in favor of the plaintiff and against Flash and vacate the attorney fees awarded in favor of the plaintiff and remand the matter for further proceedings.

¶ 47    Vacated in part; reversed in part; remanded.