2022 IL App (1st) 211442-U

No. 1-21-1442

Order filed August 9, 2022.

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| MICHAEL GREENBERG; 710 N. DEARBORN, LLC; and PARK SHORE GOLF COURSE, LLC, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | No. 2017 L 12144 |
| JIM ANGELOPOULOS; ZORAN INVESTMENTS, LLC; and DNA STATE STREET, LLC, | ) ) ) | The Honorable Michael F. Otto, |
| Defendants-Appellees. | ) ) | Judge Presiding. |

JUSTICE LAVIN delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Cobbs concurred in the judgment.

**ORDER**

¶ 1     *Held*: The circuit court properly dismissed plaintiffs' claim against defendants for "bad faith" breach of a letter of intent where the letter of intent expressly contemplated the execution of a formal agreement by plaintiff Greenberg, an obligation that he failed to perform. Additionally, the circuit court properly entered summary judgment in favor of defendant Angelopoulos where plaintiffs' claim against him for promissory estoppel was barred by the statute of frauds and plaintiffs could not prove, as a matter of law, the reasonable reliance element of their claim against him alleging common law fraud. We affirm.

¶ 2    Michael Greenberg and his companies, 710 North Dearborn, LLC, and Park Shore Golf Course, LLC, (collectively, plaintiffs), owned three properties that were about to be foreclosed on by American Charter Bank (American Charter). Greenberg's friend and business associate, Jim Angelopoulos, allegedly agreed to purchase the properties from Greenberg as a favor so that Greenberg could avoid foreclosure and eventually repurchase the properties back from Angelopoulos. Their deal, however, eventually fell through and American Charter foreclosed on the properties.

¶ 3    Subsequently, plaintiffs filed suit against Angelopoulos and his companies, Zoran Investments, LLC, and DNA State Street, LLC, (collectively, defendants), seeking contract and tort damages stemming from Angelopoulos' alleged promise to purchase the properties from Greenberg. As will be discussed in more detail below, plaintiffs' complaint set forth claims for promissory estoppel, breach of contract, "bad faith" breach of a letter of intent, also referred to by plaintiffs as breach of an express obligation to negotiate in good faith, unjust enrichment, tortious interference, equitable estoppel and common law fraud.

¶ 4    The circuit court ultimately dismissed all claims against Zoran Investments, LLC, and DNA State Street, LLC. Additionally, the court dismissed all claims against Angelopoulos except for those sounding in promissory estoppel and common law fraud. The court, however, later granted summary judgment to Angelopoulos on those claims.

¶ 5    On appeal, plaintiffs challenge only the circuit court's dismissal of their claim against defendants for "bad faith" breach of a letter of intent, and the court's summary judgment ruling entered in favor of Angelopoulos on their promissory estoppel and fraud claims. For the reasons that follow, we affirm the circuit court's judgment.

¶ 6                                    I. BACKGROUND

¶ 7    The following relevant facts were gleaned from the parties' pleadings, depositions, affidavits and other supporting documents that were all presented to the court below.

¶ 8    In November 2012, Greenberg entered into a forbearance agreement with American Charter relating to his outstanding loan balances totaling over $3 million. The loans were secured by mortgages on three properties owned by Greenberg and his two companies: 710 North Dearborn Street, an office building located in downtown Chicago; 1030 North State Street, Unit 45G, a condominium unit in downtown Chicago; and a golf course located in Michigan.[1]

¶ 9    The forbearance agreement originally required Greenberg's loans to be fully paid off by April 30, 2013. American Charter, however, subsequently agreed to extend the forbearance for 90 days if Greenberg made a principal payment of $300,000 by April 30, 2013. Greenberg did not make the full payment. Nevertheless, American Charter again agreed to extend the forbearance if Greenberg made a principal payment of $150,000 by noon on May 10, 2013. Greenberg made a partial payment to American Charter in the amount of $100,000. At the end of June 2013, Greenberg's loan balance was just under $2 million. He had until July 31, 2013, to satisfy the outstanding debt. Otherwise, American Charter would initiate foreclosure proceedings.

¶ 10    On June 13, 2013, Greenberg contacted Angelopoulos, a business associate and friend, about selling the three properties mentioned above. Greenberg and Angelopoulos supposedly came to an agreement whereby Angelopoulos would purchase the properties from Greenberg and settle the mortgages with American Charter to avoid foreclosure and allow Greenberg to

_____

[1]According to plaintiffs' fourth amended complaint, as relevant here, the Dearborn Street property was owned by 710 North Dearborn, LLC, an Illinois limited liability company wholly owned by Greenberg; the State Street property was owned by Greenberg and served as his personal residence; and the golf course was owned by Park Shore Golf Club, LLC, a Michigan limited liability company entirely owned by Greenberg.

repurchase the properties at a later time. Greenberg and Angelopoulos entered into a "Letter of Intent" (LOI) that called for them to act in good faith and for Greenberg to execute a formal agreement containing, among other things, the final terms of the sale, by no later than July 19, 2013. Yet, Greenberg never presented a formal agreement to Angelopoulos by that deadline, and on July 22, 2013, Angelopoulos informed Greenberg that he changed his mind about purchasing the properties. Shortly thereafter, Angelopoulos backed out of their deal entirely.

¶ 11 Subsequent emails between Greenberg and Angelopoulos showed that they disagreed over the terms of the sale. Greenberg's understanding was that Angelopoulos would purchase the properties and settle the mortgages with American Charter, Greenberg would continue to occupy all three properties while paying rent to Angelopoulos, and Greenberg could repurchase the properties for the same price that Angelopoulos paid. On the other hand, Angelopoulos' understanding was that he would purchase all three properties for approximately $2 million and that Greenberg would have the option exercisable within one year to reacquire a 49% interest in the properties at the original purchase price after one year expired.

¶ 12 In any event, American Charter foreclosed on the properties. About a month later, Angelopoulos purchased the properties from the bank through his companies, Zoran Investments, LLC, and DNA State Street, LLC.[2]

¶ 13 Plaintiffs subsequently brought the instant suit against defendants for contract and tort damages stemming from Angelopoulos' alleged promise to purchase the properties from Greenberg. In June 2019, plaintiffs filed, as relevant here, a fourth amended seven-count complaint against defendants. Plaintiffs' complaint sought tort and contract damages from all

---

[2]Zoran Investments, LLC, and DNA State Street, LLC, are both Illinois limited liability companies that were formed by Angelopoulos, who has a 99% ownership stake in them, to purchase plaintiffs' properties.

defendants based on allegations sounding in promissory estoppel (count I), breach of contract (count II), "bad faith" breach of the LOI (count III), unjust enrichment (count IV), and common law fraud (count VII). Additionally, plaintiffs' complaint set forth claims against Angelopoulos for tortious interference with contract (count V), and equitable estoppel (count VI).

¶ 14                                    A. Motion to Dismiss

¶ 15    Defendants moved to dismiss plaintiffs' complaint pursuant to section 2-619.1 of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2018)), arguing, in the main, that plaintiffs could not establish their breach of contract claims because they never executed a formal written agreement with the final terms of the sale, as required by the express terms of the LOI. Likewise, defendants argued that plaintiffs could not prove their tort claims since those claims were based upon alleged oral promises made by Angelopoulos that needed to be in writing. Defendants further argued that they did not breach the LOI, as plaintiffs asserted; rather, plaintiffs breached the LOI by not executing a formal written agreement by the July 19, 2013, deadline provided in the LOI. Finally, defendants argued that plaintiffs' claims against Zoran Investments, LLC, and DNA State Street, LLC, failed as a matter of law because they stemmed from the alleged oral promises made by Angelopoulos months before he formed those companies.

¶ 16    The circuit court ultimately dismissed with prejudice plaintiffs' claims for breach of contract (count II), unjust enrichment (count III), and equitable estoppel (count IV). In dismissing the claims, the court concluded that "[p]laintiffs *** failed, despite repeated opportunities, to allege that a formal agreement was ever even tendered, much less executed." The court further concluded that, while plaintiffs claimed this failure was Angelopoulos' fault,

plaintiffs failed to allege that Angelopoulos acted in bad faith. In reaching that conclusion, the court noted:

> "Although [p]laintiffs also alleged Greenberg and his attorney attempted to 'contact Angelopoulos' employees and attorneys to get them to acknowledge that the Formal Agreement should be drafted and executed,' that need was evident from the plain language of the LOI. Nothing in the terms of the LOI suggests in any way that Greenberg needed Angelopoulos['] 'go-ahead' to begin drafting the agreement. And as to any discussions which may have occurred between Greenberg and Angelopoulos after the July 19 deadline, they cannot have breached the parties' obligation to act in good faith to execute the agreement 'no later than' July 19."

The court also dismissed without prejudice Zoran Investments, LLC, and DNA State Street, LLC, as party defendants. Plaintiffs never moved to add them back in the case.

¶ 17                              B. Motion for Summary Judgment

¶ 18     Angelopoulos moved for summary on plaintiffs' two remaining claims against him alleging promissory estoppel (count I) and common law fraud (count VII). In his motion, Angelopoulos argued that plaintiffs' promissory estoppel claim was barred by the statute of frauds, a legal concept requiring contracts for real property to be in writing. Angelopoulos argued that, since there was no written contract between Greenberg and him for the sale of the properties, plaintiffs' promissory estoppel claim failed as a matter of law. Angelopoulos further argued that, even if the statute of frauds did not apply to plaintiffs' claim, they could not prove the elements of promissory estoppel where Greenberg and Angelopoulos disagreed over the terms of the sale and plaintiffs could not establish that they reasonably relied upon Angelopoulos' alleged oral promises since the LOI expressly required such promises to be in

writing. Finally, Angelopoulos argued that plaintiffs' fraud claim likewise failed as a matter of law because plaintiffs could not establish the reasonable reliance element of that claim for the same reasons that they couldn't establish it with respect to their promissory estoppel claim.

¶ 19    In response, plaintiffs argued that the statute of frauds did not apply to their promissory estoppel claim since the transaction at issue "was in essence a loan, not the purchase of real property." In other words, plaintiffs claimed that Angelopoulos agreed to "loan" Greenberg money by paying off his mortgages with American Charter. Plaintiffs alternatively argued that the statute of frauds should not apply to their promissory estoppel claim in this case because such application would leave plaintiffs without an adequate remedy while Angelopoulos, on the other hand, would be unjustly enriched. Last, plaintiffs argued that summary judgment was inappropriate as to their fraud claim because a question of fact existed as to whether they reasonably relied on Angelopoulos' supposed promises. Plaintiffs' response, however, did not address the fact that the LOI required those promises to be in writing.

¶ 20    After hearing arguments from the parties, the circuit court granted Angelopoulos' summary judgment motion on both counts. In reaching its conclusion, the court found that plaintiffs' promissory estoppel claim was barred by the statute of frauds because the alleged oral promises in this case were for the sale of real property, and therefore, they had to be in writing. Additionally, the court found that, even if the statute of frauds did not apply, plaintiffs could not prove that they reasonably relied on Angelopoulos' supposed statements because the LOI required such statements to be contained in a signed formal agreement between the parties no later than July 19, 2013, for there to be a binding promise. Finally, the court found that plaintiffs' inability to prove the reasonable reliance element of promissory estoppel also rendered them unable to prove that same element required to sustain their fraud claim. That is, plaintiffs could

not prove fraud without establishing that they reasonably relied upon Angelopoulos' alleged promises, and they could not prove such reliance without a formal written agreement between the parties.

¶ 21    The circuit court denied plaintiffs' motion to reconsider its summary judgment ruling, and they appealed.

¶ 22                              II. ANALYSIS

¶ 23            A. Circuit Court's Dismissal of Plaintiffs' "Bad Faith" Breach of the LOI

¶ 24    As stated, plaintiffs first challenge the circuit court's judgment dismissing with prejudice their claim against defendants alleging "bad faith" breach of the LOI.

¶ 25    Section 2-619.1 of the Code allows the movants to combine a section 2-615 motion to dismiss (735 ILCS 5/2-615 (West 2018)) with a section 2-619 motion to dismiss (735 ILCS 5/2-619) (West 2018)). *In re Application of County Treasurer*, 2012 IL App (1st) 101976, ¶ 28. A section 2-615 motion attacks the legal sufficiency of the nonmovants' claim, whereas a section 2-619 motion admits the legal sufficiency of their claim but asserts affirmative defenses or other matters that avoid or defeat it. *Gatreaux v. DKW Enterprises, LLC*, 2011 IL App (1st) 103482, ¶ 10. We review the lower court's judgment on a section 2-619.1 motion *de novo*, and we may affirm the court's judgment on any basis in the record, regardless of whether the court relied on that basis or whether its reasoning was correct. *Id.*

¶ 26    In this case, plaintiffs' claim for "bad faith" breach of the LOI alleged that defendants agreed, under the terms of the LOI, to "act honestly, diligently and in good faith in their *** endeavors to negotiate, settle and execute the Formal Agreement as quickly as possible and, in no case later than July 19, 2013," and that defendants breached those terms when Angelopoulos failed to execute a formal agreement by the deadline. More specifically, plaintiffs alleged that

"[o]n July 11, 2013, Greenberg presented Angelopoulos with the final and detailed terms of the contemplated transaction" and that "Greenberg told Angelopoulos that Greenberg would have his attorney write up the Formal Agreement based on this email." Although Greenberg alleged that he would have the formal agreement drafted, Greenberg also alleged that "Angelopoulos had more than a week to execute the Formal Agreement but unreasonably delayed in doing so" and that "[h]is delay caused Greenberg to not present the Formal Agreement." Simply put, plaintiffs essentially alleged that Angelopoulos failed to timely negotiate the terms of the sale, a delay which somehow caused Greenberg to not prepare the formal agreement containing such terms, even though he told Angelopoulos that he would do so.

¶ 27     Plaintiffs now argue that the circuit court erroneously dismissed their claim because it sufficiently stated a cause of action for "bad faith" breach of the LOI where the LOI was an enforceable contract under which Angelopoulos agreed to negotiate the terms of the sale in good faith. We disagree. Where, as here, the parties to a writing, which contains all essential terms of a contract but contemplates a later execution of a formal agreement, intended that the execution of the formal agreement be a condition precedent, then no contract arises unless and until that formal agreement is executed. *Quake Construction, Inc. v. American Airlines, Inc.*, 181 Ill. App. 3d 908, 912-13, (1989). Because the language of the LOI in this case is unambiguous, the construction of the LOI is a question of law, and the intentions of the parties therefore must be determined solely from the language employed. *Id*. at 913.

¶ 28     Here, the LOI expressly contemplated the execution of a formal agreement as a condition precedent. Initially, the LOI stated that "[t]he terms of this LOI are not comprehensive and it is expected that additional terms shall be incorporated into a formal agreement." Section 7 of the LOI, titled "Condition(s) Precedent," further stated that "[t]he obligation of [Angelopoulos] to

purchase the [properties] will be subject to satisfaction or written waiver by [Angelopoulos] of the following condition(s) *** within five (5) days after *execution and delivery of the Formal Agreement*." (Emphasis added.). Finally, section 10 of the LOI ("Purchase and Sale Agreement") stated that "[u]pon execution of this Letter of Intent, and after receiving necessary assurances from [American Charter], Greenberg will prepare a draft of the Formal Agreement," a condition precedent that was never met. Greenberg admits, as he did below, that no formal agreement was ever executed. While Greenberg blames this on Angelopoulos, the LOI expressly required Greenberg to prepare the formal agreement, not Angelopoulos. Accordingly, we cannot say that the LOI constituted an enforceable contract between the parties since it's clear from the language employed in the LOI that the parties intended that the execution of a formal agreement be a condition precedent.

¶ 29    Even assuming the LOI was an enforceable contract, however, Greenberg did not perform his obligations under it since he failed to "prepare a draft of the Formal Agreement." Greenberg cannot now complain that Angelopoulos breached his duties under the same instrument by failing to "negotiate, settle and execute the Formal Agreement as quickly as possible and, in no case later than July 19, 2013," when Greenberg never prepared a draft of the formal agreement for Angelopoulos to sign. See *e.g.*, *PML Development LLC v. Village of Hawthorn Woods*, 2022 IL App (2d) 200779, ¶ 41 (noting that "[o]nly a material breach of a contract provision will justify nonperformance by the other party"). As set forth, it was Greenberg's responsibility under the express terms of the LOI to prepare a draft of the formal agreement and he failed to do so by the July 19, 2013, deadline.

¶ 30    For the reasons mentioned above, the circuit court properly dismissed plaintiffs' claim against defendants for "bad faith" breach of the LOI.

¶ 31                    B. Circuit Court's Summary Judgment Ruling

¶ 32    We now turn to plaintiffs' claim that the circuit court erred in granting summary judgment to Angelopoulos on plaintiffs' claims alleging promissory estoppel and common law fraud.

¶ 33    Summary judgment should be granted when the pleadings, admissions on file, depositions and any affidavits, construed strictly against the moving party, reveal no genuine issue of material fact so that the movant is entitled to judgment as a matter of law. *Miller v. Lawrence*, 2016 IL App (1st) 142051, ¶ 21. Like the circuit court's dismissal order, we review the lower court's summary judgment ruling *de novo*. *Monson v. City of Danville*, 2018 IL 122486, ¶ 12. Furthermore, we may affirm the court's ruling on any basis in the record, regardless of whether the court relied on that basis or whether its reasoning was correct. *Miller*, 2016 IL App (1st) 142051, ¶¶ 21-22.

¶ 34                         1. Plaintiffs' Promissory Estoppel Claim

¶ 35    Promissory estoppel is a common-law doctrine that permits the enforcement of promises that are unsupported by consideration, such as gratuitous promises, charitable subscriptions and some intrafamily promises. *Matthews v. Chicago Transit Authority*, 2016 IL 117638, ¶ 91. To state a cause of action for promissory estoppel, plaintiffs here had to sufficiently plead that Angelopoulos made an unambiguous promise to them, that plaintiffs relied on that promise, that plaintiffs' reliance was expected and foreseeable by Angelopoulos, and that plaintiffs relied on his promise to their detriment. *Janda v. U.S. Cellular Corp.*, 2011 IL App (1st) 103552, ¶ 86. Although plaintiffs, as the nonmovants, were not required to prove their case at the summary judgment stage, they had to present some factual basis that would arguably entitle them to judgment at trial. *Wrobel v. City of Chicago*, 318 Ill. App. 3d 390, 397 (2000). In other words,

for plaintiffs to survive summary judgment, they had to identify some evidence from which a jury could find that Angelopoulos unambiguously promised to purchase Greenberg's properties, that plaintiffs relied on that promise, that plaintiffs' reliance was expected and foreseeable by Angelopoulos, and that plaintiffs relied on Angelopoulos' promise to their detriment. *Quake Construction, Inc. v. American Airlines, Inc.*, 141 Ill. 2d 281, 309-10 (1990). Moreover, plaintiffs' reliance had to be reasonable and justifiable. *Id.* at 310.

¶ 36    Here, the circuit court determined that Angelopoulos was entitled to judgment as a matter of law because plaintiffs' promissory estoppel claim was barred by the statute of frauds. Under Illinois law, promissory estoppel cannot be applied to allow recovery where, as here, the statute of frauds bars the contract claim. *Rosewood Care Center, Inc. v. Caterpillar, Inc.*, 366 Ill. App. 3d 730, 735 (2006). Section 2 of the Illinois Frauds Act (740 ILCS 80/2 (West 2018)) provides, as relevant here, that "[n]o action shall be brought to charge any person upon any contract for the sale of lands *** or any interest in or concerning them, for a longer term than one year, unless such contract or some memorandum or note thereof shall be in writing, and signed by the party to be charged therewith." To the extent plaintiffs relied on Angelopoulos' alleged oral promises to Greenberg to purchase plaintiffs' properties, such promises needed to be in writing since they involved the purchase of real property. And, as set forth above, no formal agreement to purchase the properties was ever executed between Greenberg and Angelopoulos, even though the LOI expressly identified a formal agreement prepared by Greenberg as a condition precedent. Thus, plaintiffs cannot establish promissory estoppel since their claim is precluded by the statute of frauds.

¶ 37    While plaintiffs assert in their appellate brief that the statute of frauds does not apply if equitable estoppel is established, plaintiffs have not challenged the circuit court's dismissal of

their equitable estoppel claim on appeal (see *supra* ¶¶ 4, 16). Plaintiffs did not identify the dismissal of their equitable estoppel claim in their docketing statement and plaintiffs do not directly raise any arguments regarding the dismissal of that claim in their appellate brief, thereby forfeiting the issue. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) (noting that "[p]oints not argued are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing"). Forfeiture aside, "[p]romissory estoppel does not bar the application of the statute of frauds in Illinois." *Robinson v. BDO Seidman, LLP*, 367 Ill. App. 3d 366, 372 (2006).[3] Because the statute of frauds would bar any judgment in favor of plaintiffs at trial on their promissory estoppel claim, summary judgment was properly granted to Angelopoulos on that basis.

¶ 38     As an additional matter, Angelopoulos has correctly observed that plaintiffs first raised their equitable estoppel argument as it pertains to the statute of frauds in their motion to reconsider the lower court's summary judgment ruling. Angelopoulos thus asserts, and we agree, that plaintiffs' estoppel argument was untimely. "Issues cannot be raised for the first time in the trial court in a motion to reconsider and issues raised for the first time in a motion to reconsider cannot be raised on appeal." *American Chartered Bank v. USMDS, Inc.*, 2013 IL App (3d) 120397, ¶ 13.

¶ 39                                    2. Plaintiffs' Common Law Fraud Claim

¶ 40     Next, we turn to plaintiffs' claim against Angelopoulos alleging common law fraud.

¶ 41     To establish a cause of action for common law fraud, plaintiffs here had to show that Angelopoulos made a false statement of material fact, that Angelopoulos knew or believed the

---

[3]While plaintiffs cite *McInerney v. Charter Golf, Inc.*, 176 Ill. 2d 482, 492-93 (1997) and section 139 of the Restatement (Second) of Contracts for the proposition that "[s]ome authorities *** have used promissory estoppel to bar the application of the statute of frauds in a narrow class of cases in which a performing party would otherwise be without an adequate remedy and there is some element of unjust enrichment," this applied in the context of an employment relationship which is not the case here.

statement was false, that Angelopoulos intended to induce plaintiffs to act, that plaintiffs reasonably relied on the truth of Angelopoulos' statement, and that plaintiffs suffered damages as a result of such reliance. *Avon Hardware Co. v. Ace Hardware Corp.*, 2013 IL App (1st) 130750, ¶ 15. As stated, even though plaintiffs, as the nonmovants, were not required to prove their case at the summary judgment stage, they had to present some factual basis that would arguably entitle them to judgment at trial. *Wrobel*, 318 Ill. App. 3d at 397.

¶ 42   Here, plaintiffs' fraud claim alleged, as relevant here, that Angelopoulos agreed to purchase plaintiffs' properties, that the LOI entered into by Greenberg and Angelopoulos "included an agreement to 'act honestly, diligently and in good faith in their respective endeavors to negotiate, settle and execute the Formal Agreement as quickly as possible and, in no case later than July 19, 2013,' " that Greenberg reasonably relied upon "Angelopoulos' representations of his intent to purchase the *** Properties," that "Angelopoulos stated, that contrary to his prior stated intention, he would not purchase the *** Properties," that Angelopoulos "fraudulently misrepresented his intentions to purchase the *** Properties," and that plaintiffs suffered over $713,000 in damages as a result of their reliance on Angelopoulos' alleged misrepresentations.

¶ 43   The circuit court, however, determined that Angelopoulos was entitled to judgment as a matter of law because plaintiffs could not prove the reasonable reliance element of their fraud claim. We agree. As set forth, the LOI clearly contemplated the execution of a formal agreement as a condition precedent and stated that it was Greenberg's obligation to "prepare a draft of the Formal Agreement." Yet, Greenberg, admittedly, failed to execute a formal agreement by the July 19, 2013, deadline. Thus, we cannot say that plaintiffs reasonably relied on Angelopoulos' alleged representations concerning the purchase of their properties when Greenberg failed to

perform the LOI's condition precedent by not drafting a formal purchase agreement for Angelopoulos to sign.

¶ 44   Additionally, plaintiffs failed to sufficiently plead any false statements purportedly made by Angelopoulos regarding the purchase of their properties because any such statements needed to be in writing and included in a formal agreement prepared by Greenberg, pursuant to the express terms of the LOI. Since no formal agreement was executed, plaintiffs cannot succeed, under these facts, on their claim alleging that Angelopoulos made false statements of material fact to them. Regardless, because plaintiffs could not prove the reasonable reliance element of their fraud claim, summary judgment was properly granted to Angelopoulos for that reason.

¶ 45                                    III. CONCLUSION

¶ 46   For the foregoing reasons, we affirm the circuit court's judgment.

¶ 47   Affirmed.